UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS - BOSTON

CRYSTAL EVANS,
PENELOPE A. SHAW,
JOANNE DANIELS-FINEGOLD, &
LINDA HUGHES,

      Plaintiffs,

vs.

THE TOWN OF BRAINTREE, MASSACHUSETTS,

      Defendant.
_____/

## COMPLAINT

Plaintiffs, CRYSTAL EVANS, PENELOPE A. SHAW, JOANNE DANIELS-FINEGOLD, and LINDA HUGHES (collectively hereinafter, "Plaintiffs" and each a "Plaintiff"), hereby sue Defendant, THE TOWN OF BRAINTREE, MASSACHUSETTS (hereinafter, "Defendant" or the "Town"), for injunctive relief and damages pursuant to 42 U.S.C. §12131, *et seq.* (hereinafter, "Title II") of the Americans with Disabilities Act (hereinafter the "ADA") and for injunctive relief and damages pursuant to 29 U.S.C. § 701 of The Rehabilitation Act of 1973 (hereinafter, the "Rehabilitation Act").

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under Title II and the Rehabilitation Act *(see also* 28 U.S.C. §§2201 and 2202).

## PARTIES

2. Plaintiff, Crystal Evans ("Ms. Evans"), is a disability rights advocate and participates or has participated on disability rights commissions in Braintree, Massachusetts.

1

3. Ms. Evans qualifies as an individual with disabilities as defined by the ADA. She is diagnosed with mitochondrial myopathy, a neuromuscular disease that inhibits muscle function and affects the nervous system. As a result, she has undergone a tracheotomy and relies on a ventilator to breathe. She is mobility impaired and uses a wheelchair to ambulate.

4. Ms. Evans resides in Braintree, Massachusetts with her husband and her young daughter.

5. Plaintiff Penelope A. Shaw ("Ms. Shaw") is an aging and disability advocate and participates or has participated as a member of various advocacy groups and advisory boards determined to advance quality of care and quality of life for the elderly, for those living in long-term care facilities, and for those with disabilities.

6. Ms. Shaw qualifies as an individual with disabilities as defined by the ADA. Among other significant diagnoses, she is diagnosed with Guillain-Barre Syndrome, a rare neuromuscular condition that affects musculature and has caused partial paralysis. She is mobility impaired and uses a wheelchair to ambulate.

7. Ms. Shaw resides in Braintree, Massachusetts.

8. Plaintiff Joanne Daniels-Finegold ("Ms. Daniels-Finegold") is a disability rights advocate and participates or has participated as a member of disability rights advocacy groups.

9. Ms. Daniels-Finegold qualifies as an individual with disabilities as defined by the ADA. She is diagnosed with genetic hyperhomocysteinemia, osteoarthritis, asthma, and chronic pain. She is mobility impaired and uses a wheelchair to ambulate.

10. Ms. Daniels-Finegold resides in Braintree, Massachusetts.

11. Plaintiff Linda Hughes ("Ms. Hughes") qualifies as an individual with disabilities as defined by the ADA. Ms. Hughes is diagnosed with macular degeneration, a condition

characterized by deterioration of the central portion of the retina. As a result, Ms. Hughes is declared legally blind.

12. Ms. Hughes resides in Braintree, Massachusetts.

13. Plaintiffs desire to access and participate in the services, programs, facilities, activities, buildings, spaces, premises and accommodations provided by Defendant, but are unable to do so as a result of Defendant's discriminatory practices described herein, which list is not exhaustive. Plaintiffs have suffered, and without the immediate relief requested herein, will continue to suffer, direct and indirect discrimination, injury and damage as a result of the Defendant's actions or inaction described herein.

14. The Town is a public entity as defined by the ADA and is subject to the provisions of the ADA and its implementing regulations. 42 U.S.C. §12131. The Town operates facilities, buildings, services, programs and activities where architectural and procedural barriers to access exist for Plaintiffs and others similarly situated, in violation of 42 USC §12132, which states in part that, "…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

## APPLICABLE LAW

15. Congress explicitly stated that the purpose of the ADA was to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and, to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to

regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities. 42 USC §12101.

16. Title II of the ADA specifies that *"no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). (emphasis added).

17. In addition to the general prohibitions against discrimination, the ADA regulation requires that *"no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."* 28 C.F.R. § 35.149. (emphasis added).

18. As a public entity, the Town is required to comply with the ADA and its implementing regulation.

19. It is widely recognized that Plaintiffs are entitled to enforce the civil rights afforded by the ADA. ("…the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the [ADA]." Bruce v. City of Gainesville, Ga., 177 F. 3d. 949, 952 (11th Cir. 1999).

20. Without in any way limiting the generality of Plaintiff's Complaint for enforcement of all obligations of the Town pursuant to the ADA, Plaintiffs specifically incorporate by reference the following obligations

   a. Plaintiffs seek relief pursuant to 42 U.S.C. §12131, *et seq.* and 28 C.F.R. §35.130, prohibiting public entities from otherwise limiting qualified disabled individuals in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by

individuals without disabilities who receive Defendant's aids, benefits and services.

b. Plaintiffs seek relief pursuant to 28 C.F.R. §35.130(b)(4), prohibiting public entities from making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, or substantially impairing the accomplishment of, the objectives of, the services, programs and activities offered by said public entity.

c. Plaintiffs seek relief pursuant to 28 C.F.R. §35.130(b)(7), requiring public entities to make reasonable modifications in policies, practices and procedures which modifications are necessary to avoid discrimination on the basis of disability.

d. Plaintiffs seek relief pursuant to 28 C.F.R. §35.130(b)(8), requiring public entities to administer services, programs and activities in the most integrated setting appropriate to the needs of qualified disabled individuals.

e. Plaintiffs seek relief pursuant to 28 C.F.R. §35.149, prohibiting public entities from excluding qualified disabled individuals from participation in, and the benefits of, said public entity's services programs and activities as a result of said public entity's facilities being inaccessible to or unusable by qualified disabled individuals.

f. Plaintiffs seek relief pursuant to 28 C.F.R. §35.150(a), requiring public entities to operate each service, program, or activity to that the service, program, or activity is readily accessible to and usable by individuals with disabilities, in connection with its existing facilities.

g. Plaintiffs seek relief pursuant to 28 C.F.R. §35.150(d), requiring public entities that have 50 or more employees to develop a transition plan, detailing any structural

changes that would be undertaken to achieve program access and specifying a time frame for completion. §35.150(d).

    h. Plaintiffs seek relief pursuant to 28 C.F.R. §35.151, requiring public entities to design and construct new facilities and make alterations to existing facilities so that they are readily accessible to and useable by individuals with disabilities.

    i. Plaintiffs seek relief pursuant to 28 C.F.R. §35.160, requiring public entities to take appropriate steps to ensure that communications with applicants, participants and members of the public and companions with disabilities are as effective as communications with others.

    j. Plaintiffs seek relief pursuant to 28 C.F.R. §35.163, requiring public entities to provide individuals with disabilities, including individuals with impaired vision or hearing, appropriate information as to the existence and location of accessible services, activities and facilities, and signage at all inaccessible entrances to each of said public entity's facilities; to direct users to an accessible entrance or to a location at which they can obtain information about accessible facilities; and to use the international symbol for accessibility at each accessible entrance to a facility.

21. Congress enacted the Rehabilitation Act forty years ago as a comprehensive federal program to *"empower individuals with disabilities to maximize… independence, and inclusion and integration into society, through… the guarantee of equal opportunity."* 29 U.S.C. § 701(b)(1)(F).[1]

---

[1] Congress found that *"disability is a natural part of the human experience and in no way diminishes the right of individuals to . . . contribute to society; pursue meaningful careers; and enjoy full inclusion and integration in the… economic… and educational mainstream of American society."* 29 U.S.C. § 701(a)(3). Nonetheless, Congress found that *"individuals with disabilities continually encounter various forms of discrimination in such critical areas as… public accommodations, … transportation, communication, recreation… voting ... and public services..."* 29 U.S.C. § 701(a)(5).

22. To effectuate these purposes, Section 504 of the Rehabilitation Act ("Section 504") provides that *"[n]o otherwise qualified individual with a disability… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."* 29 U.S.C. § 794(a).

23. Section 504 seeks *"not only to curb 'conduct fueled by discriminatory animus,' but also to right 'the result of apathetic attitudes rather than affirmative animus.'"* <u>Powers v. MJB Acquisition Corp.</u>, 184 F.3d 1147, 1152 (10th Cir. 1999) (quoting <u>Alexander v. Choate</u>, 469 U.S. 287, 296 (1985)).

24. The Justice Department's Section 504 coordination regulation prohibits criteria or methods of administration that have the purpose *or effect* of discriminating. 28 C.F.R. § 41.51(b)(3). Further, as the Eighth Circuit observed, *"[T]he Rehabilitation Act requires entities receiving federal funding to furnish auxiliary aids which 'afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement' as others."* <u>Argenyi v. Creighton University</u>, 703 F.3d at 448 (quoting 45 C.F.R. § 84.4(b)(2)).

## FACTS

25. The ADA was enacted by Congress on July 26, 1990, *more than twenty-five years ago*.

26. Many facilities, including those that were existing, or have been remodeled or newly constructed, owned by the Town or housing Town programs, services and activities <u>still</u> contain architectural barriers rendering the programs, services and activities provided at these facilities inaccessible to and unusable by individuals with disabilities, in violation of the ADA.

27. Plaintiffs, either independently or collectively, have encountered the following barriers as detailed in <u>Exhibit A</u> annexed hereto.

## COUNT I

## AMERICANS WITH DISABILITIES ACT.

28. The allegations of Paragraphs 1 through 27 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein.

29. Defendant has violated the ADA and has discriminated against Plaintiffs by excluding them from participation in and denying them the benefits of Defendant's public services, programs, facilities, activities, buildings, spaces, premises and accommodations solely by reason of their disability.

30. Pursuant to 42 U.S.C. §§12133, 29 U.S.C. §794a, and 49 U.S.C. §2000e, the Court is provided authority to grant Plaintiffs injunctive relief including an order to alter the subject premises, facilities, services, activities, programs, buildings, spaces, premises and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the ADA, closing all premises and facilities, and discontinuing all complying services, activities, programs and accommodations until the requisite modifications are completed.

## COUNT II
## SECTION 504

31. The allegations of Paragraphs 1 through 30 of the Complaint are hereby re-alleged and incorporated by reference as if fully stated herein.

32. Defendant has violated the Rehabilitation Act and related Section 504 and has discriminated against Plaintiffs by excluding them from participation in and denying them the benefits of Defendant's public accommodations, transportation services,

communication, recreation, voting, and public services, among others.

33. It is well-settled that Section 504 claimants can seek "any appropriate relief," including equitable remedies and compensatory damages. See <u>Miener v. Missouri</u>, 673 F.2d 969, 978 (8th Cir. 1982), cert. denied, 459 U.S. 909 (1982); see also <u>Rodgers v. Magnet Cove Pub. Schs.</u>, 34 F.3d 642, 643-44 (8th Cir. 1994) *("[O]nce a right of action is created, 'we presume availability of all appropriate remedies unless Congress has expressly indicated otherwise. This principle has deep roots in our jurisprudence.'")* (emphasis in original) (quoting <u>Franklin v. Gwinnet Cnty Pub Schs.</u>, 503 U.S. 60, 66 (1992)).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A. Grant judgment in favor of the Plaintiffs and declare that the Defendant violated Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation at 28 C.F.R. pt. 35; and Section 504, 29 U.S.C. § 794, and its implementing regulation at 28 C.F.R. pts. 41 and 42, subpart. G.

B. Enjoin the Defendants, their officers, agents, employees, and all other persons and entities in active concert and participation with the Defendant, from engaging in discriminatory policies and practices against individuals on the basis of their disabilities; failing to provide equal opportunity for Plaintiffs to benefit from services, programs, and activities; and otherwise failing or refusing to take appropriate steps to ensure compliance with the requirements of Title II, Section 504, and their implementing regulations.

C. Order Defendant to affirmatively modify its policies, practices, and procedures to comply with Title II, Section 504, and their implementing regulations.

D. Order such other appropriate relief as the interests of justice may require.

Dated: October 1, 2018	Respectfully submitted,

/s/George W. Skogstrom, Jr., Esq.
George W. Skogstrom, Esquire
(BBO#552725)
Schlossberg, LLC
35 Braintree Hill Office Park, Suite 204
Braintree, MA 02184
Telephone: 781-848-5028
Facsimile: 781-848-5096
Email: gskogstrom@sabusinesslaw.com

Lawrence A. Fuller, Esquire, *pro hac vice pending*
Fuller, Fuller & Associates, P.A.
12000 Biscayne Blvd., Suite 609
North Miami, FL 33181
Telephone: (305) 891-5199
Facsimile: (305) 893-9505
Email: lfuller@fullerfuller.com